**James L. BATTEN (1), Leon P. Haywood (2), Eldon L. Miller, Jr. (3), Donald L. White, Sr. (4), and Stephen L. Whitehead, Jr. (5)**

v.

**The UNITED STATES.**

No. 431–77.

United States Court of Claims.

May 16, 1979.

---

Leonard D. Levine, Virginia Beach, Va., atty. of record, for plaintiffs. Levine & Friedman, Virginia Beach, Va., of counsel.

Sandra P. Spooner, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant. Robert Reutershan, of counsel.

Before DAVIS, KASHIWA and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

SMITH, Judge:

This civilian pay case comes before the court on defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment. After considering the motions, and after oral argument, the court concludes that there is no genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law.

### I.

Plaintiffs, civilian employees of the Navy, hold "production facilitating" (or "production support") positions bearing the title "Planners and Estimators." During most of their time in federal employ, plaintiffs' rate of pay was related to the rate of pay of "wage supervisors."[1] From 1966 until the enactment of Pub.L.No.92–392,[2] the compensation of prevailing wage employees, including plaintiffs and the wage supervisors, was set, pursuant to 5 U.S.C. § 5341 (1970), by the head of each department or agency. Because each agency did not follow the same policies (for example, setting the wages of planners and estimators proportionately to the pay of wage supervisors), employees of different departments and agencies were paid disparate rates for similar work.

In part prompted by such disparities, President Johnson, on November 16, 1965, directed the Chairman of the Civil Service Commission (the Commission) to lead a collective effort, in cooperation with the heads of federal departments and agencies, to develop a coordinated wage system for federal employees in trades, crafts, and manual-labor occupations.[3] To implement the new Coordinated Federal Wage System (CFWS), the Commission issued Federal Personnel Manual Supplement (FPM Supp.) 532–1 (Sept. 1968), which provided, *inter alia*, instructions for manual conversion of most wage employees (among them, the wage supervisors) to the new system; it also "set aside" certain positions (among them plaintiffs') and provided that they should be continued under existing agency pay systems "until an opportunity [was] presented to the National Wage Policy Committee [NWPC] for consideration and recommendation." [4]

The impact on plaintiffs of the decisions incorporated in FPM Supp. 532–1 was that the relation between their pay rates and those of the wage supervisors was severed; the wage supervisors were converted to the new system, and plaintiffs' positions were set aside, on July 26, 1970.[5] The decision to set aside plaintiffs' job classification, rather

---

1. According to defendant, the term "wage supervisors" refers to those employed in regular (as opposed, for example, to production facilitating) supervisory positions. Wage supervisors oversee such workers as mechanics, plumbers, and carpenters. Both plaintiffs and the wage supervisors were paid under the prevailing wage system rather than under the General Schedule.

2. Act of Aug. 19, 1972, 86 Stat. 564 (codified at 5 U.S.C. §§ 5341–49 (1976) ).

3. Presidential Memorandum to the Chairman of the Civil Service Commission, App. A, FPM Supp. 532–1 (Nov. 16, 1965); Presidential Memorandum to the Heads of Executive Departments and Agencies, App. B, FMP Supp. 532–1 (Nov. 16, 1965).

4. FPM Supp. 532–1, Subch. S2 ¶ S2–3a (Sept. 1968).

5. Both defendant and plaintiffs, in their initial briefs, stated that the wage supervisors were converted to the new system on December 16, 1968. Defendant subsequently revised the date

than to bring it immediately into the new system as had been done with the wage supervisors' job classification, was made, defendant asserts, because the Civil Service Commission determined that it was necessary to make a further study of the appropriate levels of pay for plaintiffs and others. Such a study was in fact conducted, and, as a result, it was decided that production facilitating employees should be included in the new wage system (rather than converted to the General Schedule), and those production facilitating employees whose wages had previously been tied to the pay of wage supervisors were returned to that pay status.[6] The effective date of this change for plaintiffs was September 3, 1972. The net result was that, from July 26, 1970,[7] until September 3, 1972 (the claim period), plaintiffs did not receive the higher hourly wage they would have received had they been converted to the new system at the same time as the wage supervisors—or had their wage schedules never been severed from those of the wage supervisors.

Plaintiffs complain that this severing and setting aside of their positions was arbitrary and capricious as a matter of law and that therefore they are entitled to compensation amounting to the difference between their wages and those of the wage supervisors for the claim period.[8] They base their

claim solely upon the Back Pay Act, 5 U.S.C. § 5596 (1976). Defendant has moved for summary judgment on grounds of lack of jurisdiction under the Back Pay Act and the statute of limitations.[9] Because we hold that this court lacks jurisdiction to consider plaintiffs' claims under the Back Pay Act, we need not reach the limitations issue.[10]

## II.

The Back Pay Act authorizes the retroactive recovery of wages whenever a federal employee has "undergone an unjustified or unwarranted personnel action that has resulted in the *withdrawal* or *reduction* of all or a part of" the compensation to which the employee is entitled. 5 U.S.C. § 5596(b) (1976) (emphasis supplied). Plaintiffs essentially complain not that their compensation was withdrawn or reduced, but that it was not increased sooner. Plaintiffs' pay was at no time reduced. Throughout the claim period, they continued to receive the same pay, and the same upward pay adjustments, they had received in the past under the same pay system. They are merely chagrined because the wage supervisors were converted to the new system in 1970 and they were not so converted until approximately 2 years later. During this period the Commission did in fact conduct a

to July 26, 1970. In view of our holding on this court's jurisdiction, the precise conversion date of the wage supervisors is not material.

6. FPM Letter No. 532–34 (June 30, 1972).

7. See note 5 *supra*.

8. Plaintiffs claim that they lost $1.33 per hour for each hour they worked while in set-aside status. Defendant contends the largest possible hourly wage difference during the claim period was $0.34. The amount of the differential is immaterial in view of our holding.

9. Defendant raised other affirmative defenses in its answer but has not pursued them on brief.

10. Were it not for our decision that we lack jurisdiction of these claims under the Back Pay Act, defendant would clearly be correct that the applicable statute of limitations, 28 U.S.C. § 2501 (1976), bars this court from taking jurisdiction over plaintiffs' claims for any sum representing wages which were due more than 6

years prior to August 24, 1977, when plaintiffs' petition was filed. *Kirby v. United States*, 201 Ct.Cl. 527, 531 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Todd v. United States*, 292 F.2d 841, 844, 155 Ct.Cl. 87, 93 (1961). A claim for periodic installments of back pay allegedly due is a continuing claim involving multiple causes of action, each one arising at the time the Government fails to make the payment alleged to be due. *Daniels v. United States*, 407 F.2d 1345, 1346 n.1, 187 Ct.Cl. 38, 40 n.1 (1969); *Burich v. United States*, 366 F.2d 984, 177 Ct.Cl. 139 (1966), *cert. denied*, 389 U.S. 885, 88 S.Ct. 152, 19 L.Ed.2d 182, *rehearing denied*, 389 U.S. 998, 88 S.Ct. 486, 19 L.Ed.2d 504 (1967). We assume, in this regard, that plaintiffs' communications with the Commission and others did not constitute exhaustion of mandatory administrative remedies sufficient to toll the statute. *See Friedman v. United States*, 316 F.2d 381, 159 Ct.Cl. 1 (1962), *cert. denied*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

thorough study of the many problems involved in the proposed conversion and, in its report to the NWPC, cautioned that body to give thorough and careful consideration to all aspects of the situation before making a final decision.

Plaintiffs attempt to bring themselves within the purview of the Back Pay Act by contending that the tying of their wage schedule to the wage schedule of the wage supervisors was an "emolument"[11] the withdrawal of which is compensable. Their claim is, in this sense, akin to the claims of plaintiffs in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In that case, Government employees claimed that their duties and responsibilities met the requirements for a higher classification and that, under the civil service regulations, they were entitled to the higher rating. The Court held that the Back Pay Act does not apply to "wrongful-classification claims."[12] Plaintiffs here have pointed to no statute or regulation requiring their pay rates to be tied to the wage supervisors' rates; absent such a clear expression of entitlement, plaintiffs' claims as asserted are "wrongful severance" and "wrongful setting-aside" claims which are not justiciable under the Back Pay Act.[13]

Defendant's motion for summary judgment is granted, plaintiffs' cross-motion for summary judgment is denied, and the petition is dismissed for lack of jurisdiction.

---

**11.** The Back Pay Act was intended "to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." *United States v. Testan*, 424 U.S. 392, 407, 96 S.Ct. 948, 957, 47 L.Ed.2d 114 (1976).

**12.** *Id.* at 405, 96 S.Ct. 948.

**13.** Although we intimate no holding on the matter, plaintiffs' arguments that the actions of the Commission were arbitrary and capricious may have been cognizable under the prevailing wage statutes. However, since plaintiffs ground their claim solely upon the Back Pay Act, our holding is not to be taken as one precluding a properly presented claim under the prevailing wage statutes, 5 U.S.C. §§ 5341–49 (1976). *See generally Baratt v. United States*, 585 F.2d 1041, 218 Ct.Cl. —— (1978); *Daigle v. United States*, Ct.Cl. No. 264–76 (slip op. July 14, 1978); *Blaha v. United States*, 511 F.2d 1165, 206 Ct.Cl. 183 (1975); *Keefe v. United States*, Civ. No. 75–113-N (E.D.Va. Dec. 1, 1975) (opinion from the bench); *Daniels v. United States*, 407 F.2d 1345, 187 Ct.Cl. 38 (1969); *see also Amell v. United States*, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966).