**Arthur C. SCHMID, Jr.**

v.

**The UNITED STATES.**

**No. 493–69.**

United States Court of Claims.
Jan. 22, 1971.

**988**

Arthur B. Hanson, Washington, D. C., attorney of record, for plaintiff.

Arthur A. Birney, Washington, D. C., and John H. Blish, Providence, R. I., of counsel.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

COLLINS, Judge.

This case comes to us on the parties' cross-motions for summary judgment. There is no dispute as to the facts.

On June 27, 1969, Arthur C. Schmid, Jr., plaintiff herein, was involuntarily released from active duty as a member of the United States Naval Reserve. On the date of his release plaintiff had attained the rank of lieutenant and was receiving a base pay of $753 per month. He had served 4 years, 6 months, and 27 days of continuous active duty, beginning November 30, 1964. Previously, he had served on active duty from June 30, 1958, to August 30, 1962, a period of 4 years, 1 month, and 30 days. The present claim arises out of the denial by the Department of the Navy of plaintiff's request for readjustment pay pursuant to 10 U.S.C. § 687(a), as amended (Supp. III, 1965–67), and it is this statute to which we must now direct our attention.

The statute provides, in relevant part, as follows:

§ 687. Non-Regulars: readjustment payment upon involuntary release from active duty.

(a) Except for members covered by subsection (b), a member of a reserve component or a member of the Army or the Air Force without component who is released from active duty involuntarily, or because he was not accepted for an additional tour of active duty for which he volunteered after he had completed a tour of active duty, and who has completed, immediately before his release, at least five years of continuous active duty, is entitled to a readjustment payment computed by multiplying his years of active service (other than in time of war or of national emergency declared by Congress after June 28, 1962), but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release. * * * For the purposes of this subsection—

(1) a period of active duty is continuous if it is not interrupted by a break in service of more than 30 days;

(2) *a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded*; and

(3) a period for which the member concerned has received readjustment pay under another provision of law may not be included. [Emphasis supplied.]

It is the Government's position that the statute is ambiguous, but that its legislative history makes it clear that the rounding provision of subsection (2) was intended to apply only to the computation of readjustment pay and not to the 5-year eligibility requirement therefor. That is, the Government argues that the statute, illuminated by its legislative history, requires continuous active duty service of 5 actual years in order to

establish eligibility for readjustment pay. Thus, since plaintiff was on continuous active duty for less than 5 actual years during his last period of active duty, he has not established eligibility under the statute and is not entitled to readjustment pay.

Plaintiff argues that the statute is clear on its face—the rounding provision applies equally to the eligibility requirement and to the method of computation. There is, therefore, no need to refer to legislative history, which, according to plaintiff, is supportive of plaintiff's position or, at least, ambiguous. Because plaintiff served more than 4 years and 6 months of continuous active duty immediately before his discharge, he claims that, for purposes of the eligibility requirement, he has served the required 5 years.

We find that the section is clear and unambiguous on its face and is susceptible, on its face, of only one interpretation. The relevant part of the last sentence of section 687(a) provides that "For the purposes of this subsection * * * (2) a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded * * *." Congress imposed no express or implied limitation on the applicability of this rounding provision. The clear indication is that, in determining eligibility for readjustment pay and in computing the amount thereof, a period of 6 months or more is counted as a whole year.

But, although we find no ambiguity in the words of the statute, we are not precluded from examining the legislative history underlying the enactment in order to determine whether there is clear and compelling support for the interpretation urged by the defendant. *See* Lionberger v. United States, 371 F.2d 831, 834, 178 Ct.Cl. 151, 157, cert. denied, 389 U.S. 844, 88 S.Ct. 91, 19 L.Ed. 2d 110 (1967). As the Supreme Court has said, "[w]hen aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however *clear the words may appear* on 'superficial examination.'" United States v. American Trucking Ass'ns, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (footnotes omitted). After a careful review of the legislative history of section 687(a), we conclude that the support which it lends to defendant's position is not so clear and compelling as to require us to adopt an interpretation of the section inconsistent with the clear import of its terms.

Section 687(a) was first enacted in 1962 [1] and was intended as a revision of the former readjustment pay statute, Act of July 9, 1956, ch. 534, § 265, 70 Stat. 517. The 1956 statute, which was repealed by section 687(a), read, in pertinent part, as follows:

"SEC. 265. (a) A member of a reserve component who is involuntarily released from active duty after the enactment of this section and after having completed immediately prior to such release at least five years of continuous active duty, except for breaks in service of not more than thirty days, as either an officer, warrant officer, or enlisted person, is entitled to a lump-sum readjustment payment computed on the basis of one-half of one month's basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the eighteenth year. *For the purposes of computing the amount of readjustment payment (1) a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded,* and (2) any prior period for which severance pay has been received under any other provision of law shall be excluded. * * *" [Emphasis supplied.]

---

1. The section was amended in 1966. However, for present purposes, that amendment is irrelevant.

The language of the repealed statute of 1956, which, it should be pointed out, could easily have been employed in section 687(a), made it perfectly clear that a part of a year that was 6 months or more was to be counted as a whole year only for the purpose of computing readjustment pay.

Defendant has stressed that the Senate report accompanying H.R. 10433 (part of which became section 687(a), as passed states:

> This bill, as amended, is not intend-ed to make any substantive change in existing law. Its purpose is to bring up to date title 10 of the United States Code, by incorporating the provisions of a number of public laws that were passed while the bill to enact title 10 into law was still pending in the Congress, and to transfer to title 10, provisions now in other parts of the code.

S.REP.NO.1876, 87th Cong., 2d Sess., 1962–2 U.S. CODE CONG. & AD. NEWS, p. 2456. We think the defendant relies too heavily upon this general statement of purpose, however, especially when the impact of the statement turns on a determination of what is a "substantive change in existing law." Even if the legislative history of section 687(a) contained no indicia of an intent contrary to that expressed in the quoted statement of purpose, we doubt whether that statement, standing alone, furnishes the clear and compelling evidence of intent which is required before the plain meaning of statutory words can be disturbed.[2]

In any event, we are not faced with having to decide whether the statement of purpose, standing alone, is sufficient to justify disturbing the plain meaning of the statute because there is, in the statute's legislative history, a strong indication that the intent of Congress was in accord with the statute's plain meaning.

In enacting section 687(a), Congress discarded the unambiguous language of the 1956 statute and adopted, instead, language which it had ample reason to believe would make the rounding provision applicable to the eligibility requirement as well as to the computation formula.

The 1956 statute originated as H.R. 9952. As it was passed by the House the bill read, in pertinent part:

> "SEC. 260. (a) A member of a reserve component who is involuntarily released from active duty after having completed immediately prior to such release at least 5 years of continuous active duty, except for breaks in service of not more than 30 days, as either an officer, warrant officer, or enlisted person, is entitled to a lump-sum readjustment payment computed on the basis of one-half of 1 month's basic pay in the grade in which he is serving at the time of release from active duty for each year of active service ending at the close of the 18th year. *For the purposes of this subsection, a part of a year that is 6 months or more is counted as a whole year, and a part of a year that is less than 6 months is disregarded.* * * * [Emphasis supplied.]

H.R. 9952, 84th Cong., 2d Sess. (1956). The Senate, however, amended the legislation, adopting several recommendations contained in a letter, dated November 17, 1955, from the Comptroller General to Senator Russell, Chairman of the Committee on Armed Services, commenting on a similar bill. That letter stated, in pertinent part:

> Although the language of subsection (a) of the bill seems to indicate that a minimum of 5 years' continuous active duty as an officer or warrant officer

---

2. Defendant also points to the fact that the revision notes accompanying Senate Report No. 1876 state that the words " 'For the purposes of' are omitted as surplusage." S.REP.NO.1876, 1962–2 U. S.CODE CONG. & AD.NEWS, p. 2457. This is no argument at all. The omitted words would have been surplusage regardless of the interpretation given section 687(a).

is necessary to qualify for a readjustment payment, the last sentence of that subsection appears to reduce the minimum qualifying service to 4 years and 6 months. Presumably the provision authorizing the counting of 6 months or more as a whole year was intended to apply only for the purpose of computing the amount of a lump-sum payment and not the quantum of qualifying service. If so, the language should be clarified, perhaps somewhat as follows:

"For the purpose of computing the amount of the readjustment payment a fractional part of a year amounting to 6 months [or 183 days] or more shall be counted as a whole year and a shorter period shall be disregarded."

1956–2 U.S.CODE CONG. & AD. NEWS, pp. 3068, 3070. The restoration in section 687(a) of the language of H. R. 9952, that which the Comptroller viewed as reducing the minimum qualifying service to 4 years and 6 months, is, we think, a strong indication of congressional intent—far stronger than that on which the defendant relies. We do not mean to say that the legislative intent underlying section 687(a) is in accord with the clear meaning of the statutory words, only that the legislative history of that section does not so clearly evidence an intent inconsistent with the plain meaning of the statutory language as to enable us to depart from that plain meaning.

Defendant also argues that the Department of the Navy, one of the agencies charged with the administration of section 687(a), interprets the statute as providing for rounding only for the purpose of computing readjustment pay, and that this administrative interpretation of the statute is entitled to great weight.

There are many instances when the prior administrative interpretation of a statute is entitled to great respect.

\* \* \* [T]he practical construction given to an act of Congress, fairly susceptible of different constructions, by those charged with the duty of executing it is entitled to great respect and, if acted upon for a number of years, will not be disturbed except for cogent reasons. [Footnote omitted.]

McLaren v. Fleischer, 256 U.S. 477, 481, 41 S.Ct. 577, 578, 65 L.Ed. 1052 (1921). This is, however, but one of many principles bearing on the construction of legislation. It is not the cardinal or dominating rule. In this instance we find that, all things considered, the Navy's course of interpretation is less persuasive than the factors which point to the construction urged by the plaintiff. These other factors, the statutory words and the critical part of the legislative history to which reference has already been made, are sufficient to overcome the administrative construction.

For the foregoing reasons we grant plaintiff's motion for summary judgment and deny defendant's cross-motion for summary judgment. Judgment is entered for plaintiff in the amount of $13,554, computed, according to section 687(a), by multiplying his years of active service (9)[3] by 2 months' basic pay ($1,506). No interest is allowable under 28 U.S.C. § 2516 (1964).

NICHOLS, Judge (dissenting).

I think § 687 is ambiguous by reason of the words "\* \* \* who has completed, immediately before his release, at least five years of continuous active duty \* \* \*." This I read as saying that anything under five years is not enough. It is seemingly contradicted by subsection (2) as Judge Collins quotes it. If two parts of a statute can be read as not contradicting one another, that reading is to be preferred, but such a reading is difficult here. I agree that the legislative history looks both ways and the Navy practice is not of long enough standing to control, nor are we

---

3. This figure is arrived at by totaling and rounding all of plaintiff's active duty service.

shown what the other Services have done.

Confronted with an ambiguous statute, with legislative history and prior administrative practice unhelpful, and with no prior court decisions cited to us, we must fall back on our intuition for the intent of Congress. It may be debatable how finely tuned my intuition is, but for whatever it is worth, I just cannot force myself to believe the Congress intended that anyone having under five years active service should qualify. It might be said, if the Congress meant four years and six months when it wrote five years, it would have been simpler to have written four years and six months. I do not say it because, in all honesty, I know that the Congress sometimes elects the long way around. That approach is too simplistic. We may ask ourselves instead what legislative scheme or plan would envision four years and six months as a qualifying period. How was it selected?

In resolving ambiguity, we must allow ourselves some recognition of the existence of sheer inadvertence in the legislative process. I think that in 1962 they just simply overlooked that in adopting a change of language, there might be some literal-minded persons who would infer a change of meaning. The struggle between the brash re-codifier who wants to "clean up" the language, and is sure he knows how to do so without changing substance, as against the cautious one who clings to obsolete and opaque terminology, for fear of making an inadvertent change, is ancient in the field of legislative draftsmanship. Notorious examples exist in other fields, as for example the standard policy of marine insurance. Conceding that, if I am right, the recodification here was not skillfully done, I think the result gives aid and comfort to the anti-re-codification school of thought and tends to discourage an activity which, in my view, is in the public interest on the whole.

That the change was inadvertent is strongly supported by the reports reproduced in 1962-2 U.S.Code Cong. & Ad.

News, at p. 2457. They set forth the statutory sources of § 687, purport to show each change of language, and to explain in each instance the lack of any substantive change. Yet the reduction of the qualifying period from five years to four years six months is nowhere mentioned. I believe that the Congress, had it consciously considered reducing the qualifying period as alleged, would have held hearings and received reports and testimony. This would have been a matter of importance to the GAO, which commented on the 1956 legislation, as well as to executive agencies, and to veteran's organizations. Apparently nothing of the kind occurred.

I take this occasion to reiterate what I wrote, concurring, in Sarkes Tarzian, Inc. v. United States, 412 F.2d 1203, 1214, 188 Ct.Cl. 766, 787 (1969):

Defendant forgets that the intent of Congress must be our lodestar, and that any statutory construction necessarily imputes an intent to Congress. If Congress didn't intend it, the statute doesn't do it. \* \* \*

There it was defendant that forgot. Here I fear it is the court.